**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**MICHELLE JOYNER,**

           **Plaintiff,**

**-vs-**　　　　　　　　　　　　　　　　　　　　　　　**Case No. 6:04-cv-597-Orl-DAB**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

           **Defendant.**

_____

## MEMORANDUM OPINION AND ORDER

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying her claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **AFFIRMED.**

### *I. BACKGROUND*

**A.**    **Procedural History**

Plaintiff filed for a period of disability, DIB and SSI benefits on April 18, 2001. R. 72-74. She alleged an onset of disability in October 22, 2001, due to cirrhosis, depression, back pain, peripheral neuropathy in her feet and hands, headaches, and dizziness. R. 35, 41-47, 53, 82, 110. Her application was denied initially and upon reconsideration. R.49-53, 56, 65-66, 383-92. Plaintiff

requested a hearing, which was held on June 16, 2003, before Administrative Law Judge Peter C. Edison (hereinafter referred to as "ALJ"). R. 26-48. In a decision dated July 22, 2003, the ALJ found Plaintiff not disabled as defined under the Act through the date of his decision. R. 11-24. Plaintiff timely filed a Request for Review of the ALJ's decision. R. 71. The Appeals Council denied Plaintiff's request on February 27, 2004. R. 5-10. Plaintiff filed this action for judicial review on April 26, 2004. Doc. No. 1.

### B. Medical History and Findings Summary

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of cirrhosis, back pain, and hand and foot pain. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from cirrhosis of the liver due to alcoholism, mild peripheral neuropathy, and degenerative disc disease of the cervical and lumbar spine, which were "severe" medically determinable impairments, but were not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 20. The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform substantially all the requirements of sedentary work, as she could lift ten pounds occasionally, sit six hours in an eight-hour workday, and stand and walk for two hours in an 8-hour workday; and could occasionally climb, balance, stoop, kneel, crouch and crawl. R. 22-23. In making this determination, the ALJ found that Plaintiff's allegations regarding her limitations were not fully credible to the extent of establishing that her impairments were severe enough to preclude her from performing substantial gainful activity for the reasons set forth in the body of the decision.[1] R. 21. Based upon Plaintiff's RFC, the ALJ determined that she could not perform her past relevant work

---

[1] Within the body of the decision, the ALJ discredited Plaintiff's reported limitations based on several specific inconsistencies between those limits and the medical findings. R. 20-21.

-2-

as a daycare owner/operator, seamstress, and cashier, which are generally light in physical demand. R. 22. Considering Plaintiff's vocational profile and RFC, the ALJ applied the Medical-Vocational Guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and concluded that Plaintiff could perform work existing in significant numbers in the national economy. R. 22. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 22-23.

Plaintiff now asserts five points of error. First, she claims the ALJ erred by finding she had the RFC to perform sedentary work contrary to treating doctors' statements. Second, Plaintiff contends the ALJ erred by finding that her mental impairment was not severe. Third, she argues that the ALJ erred by relying upon the grids, rather than obtaining vocational expert (VE) testimony, because Plaintiff suffered non-exertional impairments. Fourth, she asserts that the ALJ erred by improperly applying the pain standard given the evidence of her back impairment. Fifth, she argues that the ALJ erred in evaluating her credibility. All issues are addressed, although not in the order presented by Plaintiff. For the reasons that follow, the decision of the Commissioner is **AFFIRMED**.

## II. STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560

(11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### A. Severe mental impairment

Plaintiff argues that the medical evidence reflected depression and that a psychiatrist concluded that her mental condition resulted in marked functional limitations. The Commissioner contends that Plaintiff does not have a severe mental impairment and the ALJ was not obligated to include any nonexertional limitations in his RFC findings.

At Step 2 of the five-step evaluation process, the ALJ is called upon to determine whether a claimant's impairments are severe. By definition, this inquiry is a "threshold" inquiry. It allows only claims based on the most trivial impairments to be rejected. In this Circuit, an impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. A claimant need show only that her impairment is not so slight and its effect not so minimal. *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).

>In this case, the ALJ concluded that:
>
>Although the claimant alleges depression and anxiety as part of her disability, the undersigned finds that the claimant's mental impairments are not "severe impairments" because they have imposed no more than mild restriction of activities of daily living, mild difficulties in maintaining social functioning and mild difficulties in maintaining concentration, persistence or pace with no repeated episodes of decompensation.

R. 19.[2] The ALJ relied on the opinions of the non-treating State Agency physicians. R. 223-35; 276-88.

There are several references to Plaintiff's depression in the record, and Plaintiff's treating physicians treated her for depression with the psychiatric medications, Zoloft, Xanax, Paxil, during her treatment. R. 304. Although Dr. Wylie concluded that Plaintiff suffered from depression and anxiety and indicated on a form dated September 23, 2002 that Ms. Joyner had marked functional limitations in her activities of daily living, maintaining social functioning, deficiencies of concentration, persistence or pace, and three repeated episodes of decompensation (R. 306), these statements conflict with his underlying treatment notes, which indicate that certain prescribed medications were making her "feel better," her depression had eased up (R. 309), the medications "were helping" and Plaintiff was "not depressed now" as of July 22, 2002. R. 308. According to Dr. Wylie's subsequent treatment notes from January 21, 2003, Plaintiff reported that she "felt better," the medicines "were helping" and she was "not depressed now." R. 302. In addition, as the Commissioner points out, Dr. Wylie's opinion conveyed Plaintiff's mental impairments on a "check box form" (R. 308-14) rather than in a written summary of his treatment notes, and as the

---

[2]Plaintiff takes issue with the ALJ's assertion that the State Agency physicians did not think the mental condition was severe, contending that "one State Agency physician did indicate the mental condition was a severe impairment." However that physician found Plaintiff's impairment to be "severe but not expected to last 12 months" (R. 223) which would mean it did not qualify as a disabling condition under the SSA regulations.

Commissioner points out, such forms are weak evidence, especially as in this case when they conflict with the treatment notes. *See Mason v. Shalala*, 994 F.2d 1058, 1065 (3rd Cir. 1993) ("form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best"). Dr. Wylie's treatment notes indicate Plaintiff was treated conservatively on an out-patient basis and seen every 60 days or so (R. 302-14). The failure of Dr. Wylie or other physicians to recommend mental health treatment beyond medications and Plaintiff's failure to seek such suggests that her depression was adequately controlled by the medications. *See* R. 302 (medicines "were helping").

According to a consultative evaluation performed by Dr. William Friedenberg, Ph.D., Plaintiff's overall memory and concentration were only mildly impaired. R. 222. He identified no impairment-related restrictions, determined that Plaintiff's ability to calculate simple arithmetic problems was intact, that her judgement was preserved, and that she was able to manage funds. R. 222.

Based upon this evidence, the ALJ concurred with state agency physicians who opined that Plaintiff's mental impairments were either not severe or not expected to last 12 months and that she had only mild restrictions in daily living, social functioning, and maintaining concentration, persistence or pace. (R. 19, 223, 276). The ALJ concluded that Dr. Wylie's opinion of Plaintiff's marked mental limitations "somewhat extreme and non consistent with the totality of the medical evidence" based on her mental status examinations and Plaintiff's testimony concerning her daily activities. R. 19. Thus, it is apparent that the ALJ carefully considered the evidence. The medical and other evidence support the ALJ's determination that Plaintiff did not suffer from a severe mental impairment.

### B.     RFC and the treating physicians' opinion

Plaintiff claims that the ALJ should not have found her able to perform a full range of sedentary work in light of limitations assigned by Drs. Ahmed and Parnell, precluding Plaintiff's performance of even sedentary work. The Commissioner contends that substantial evidence supports the ALJ's decision that Plaintiff was not disabled.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d).

If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1158-59 (11th Cir. 2004); *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

Dr. Parnell and Dr. Ahmed, Plaintiff's treating physicians, indicated that Plaintiff's RFC was for less than sedentary work. R. 322, 325-29, 354-56. Dr. Ahmed stated that Plaintiff could not work

because of severe chronic pain in her feet, legs, and hands. R. 325-26. Dr. Ahmed also indicated that Plaintiff would only be able to sit, stand and walk for less than two hours a day, could rarely lift less than ten pounds, and that she would be absent four or more days per month due to her symptoms, and she could not tolerate even a low stress job. R. 326-29. Dr. Parnell also opined that Plaintiff would be able to sit, stand and walk for less than two hours a day, and she could not lift any amount of weight. R. 355, 356. Dr. Parnell indicated that Plaintiff's chronic pain in her feet, legs, and hands and lumbar spine area would interfere with attention and concentration on a constant basis, and she would not be able to perform even a low stress job because of her inability to focus on any task for any length of time. R. 354.

The ALJ discounted Plaintiff's treating physicians' opinions and her pain complaints to find Plaintiff capable of sedentary work based on the objective medical evidence:

> The undersigned [ALJ] has also considered Dr. Parnell and Dr. Ahmed's opinions as to the claimant's residual functional capacity. However, the undersigned finds these opinions somewhat extreme and not consistent with the objective medical evidence. The medical evidence reveals that the claimant has a history of alcoholic liver disease. However, liver biopsies have not revealed evidence of cirrhosis. The claimant's liver enzymes have been essentially within normal limits. In addition, there has been no stimagata [sic] of chronic liver disease. The medical evidence also reveals that the claimant has complained of weakness of her lower extremities, tremors of her hands and feet as well as numbness and tingling of her right foot. However, nerve conduction studies have not revealed any definite abnormalities. Therefore, considering the totality of the evidence, the undersigned finds that the claimant retains the residual functional capacity to lift 10 pounds occasionally, sit for 6 hours in an 8-hour workday and stand and walk for 2 hours in an 8-hour workday.

R. 21-22. The ALJ also reviewed and took into account the MRI report which indicated bulging discs in Plaintiff's back and nerve conduction studies that were normal, with the exception of one left leg study which indicated an S1 radiculopathy. R. 18. The ALJ also relied on the consultative

examination conducted by Dr. Gilmer, during which Plaintiff was able to walk without assistance and without a limp and walked on her heels and toes without difficulty. R. 21.

Dr. Valenstein, Plaintiff's neurologist, was unable to determine that Plaintiff had peripheral neuropathy, despite her pain complaints, and the ALJ appropriately relied on Valenstein's report. R. 18 (ALJ); R. 315-18 (Valenstein notes). Dr. Valenstein noted that the MRI report showed mild disc bulging "but nothing that would explain her symptoms." R. 316. His notes also report that Plaintiff had no muscle atrophy and had good reflexes, and full range of motion in her arms and legs; with no edema, ulceration, or varicosities in her legs and hypothesized that her problem may be a residual of a nutritional neuropathy related to alcohol. R. 316-17. "In summary, this young lady has a great deal of discomfort but has an almost normal neurologic examination. She has minimal sensory loss in her toes and still has intact reflexes and good strength. She might have a mostly sensory painful peripheral neuropathy. I cannot prove this. . . . Unfortunately, the diagnosis of pure painful sensory neuropathy is difficult and often diagnostic studies are unrewarding." R. 317.

Although Dr. Parnell indicated that he did not believe Plaintiff to be a malingerer (R. 354), it is telling that Dr. Ahmed gave the following very qualified answer about whether Plaintiff might be a malingerer: "There are some hystrionic[3] components to exam, give away weakness on exam." R. 326. Dr. Ahmed reviewed Valenstein's report and stated in a general letter that Valenstein "could not give a definite diagnosis. . . . He suggests there that further testing probably would not be of benefit." R. 322. Dr. Ahmed's earlier treatment notes state that during the examination, Plaintiff "is histrionic and tearful during the test. I am unsure if she is giving her best effort at times." R. 345.

---

[3]"Histrionic" is defined as overdramatic in reaction or behavior or deliberately affected. Encarta Dictionary online; Dictionary.com.

The ALJ also took into account the opinions of the state agency physicians who reviewed the evidence, found their opinions to be "optimistic" and appropriately adjusted those assessments in Plaintiff's favor. R. 21. The medical evidence and treating notes did not support the extreme limitations or RFC opinions of Dr. Parnell and Dr. Ahmed. Accordingly, good cause existed for the ALJ's failure to credit their opinions. The ALJ's determination was supported by substantial evidence.

### C. Pain and credibility.

Plaintiff asserts that the ALJ erred in evaluating her pain[4] from her peripheral neuropathy. She also argues that the ALJ erred by finding her subjective complaints credible only to the extent she is limited to sedentary work. She contends that the record demonstrates her credibility and that the ALJ failed to provide adequate and specific reasons for discrediting her complaints.

Although the ALJ did not refer to the Eleventh Circuit's pain standard as such, he clearly was aware of the governing standards for evaluating subjective complaints because he cited the applicable regulations and Social Security Ruling ("SSR") 96-7p. R. 20. *See Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002) (per curiam) (ALJ properly applied the Eleventh Circuit pain standard even though he did not "cite or refer to the language of the three-part test" as "his findings and discussion indicate that the standard was applied"). The ALJ complied with the standards set by the Eleventh Circuit. He obviously determined that plaintiff had an objective medical condition that could give rise to the alleged symptoms, because otherwise the ALJ would not be required to assess the credibility of the alleged complaints.

---

[4] Plaintiff's brief erroneously refers in two places to Plaintiff's "severe *pulmonary* disease" and the results of "*pulmonary* functioning tests." Doc. No. 10 at 17, 19. The remainder of the brief discusses Plaintiff's neuropathy condition -- the condition she actually suffers from.

-10-

Having concluded that he had to make a credibility determination of Plaintiff's subjective complaints, the ALJ plainly recognized that he had to articulate a reasonable basis for his determination. In that respect, immediately before discussing Plaintiff's RFC, the ALJ stated,

> At the hearing, the claimant testified that her feet hurt all the time. The claimant testified that she experiences shooting pain when standing. The claimant testified that she woke up 2 or 3 times crying last night due to pain. The claimant also testified that she experiences low back pain all the time. She also experiences vertigo when standing because she cannot tolerate the pain. The clamant testified that since [her] spinal tap, she experiences pain up to her neck and head. The clamant testified that her hands get numb and that fingers tingle. The claimant testified that she experiences severe cramps in her feet and legs. The claimant estimated that she was able to sit for 15-20 minutes, walk for 1/2 block and that she is unable to stand in one spot. The claimant testified that she is unable to do chores. She needs help getting in the bath tub. The claimant denied any abdominal pain.
>
> While it is reasonable to conclude that the claimant should have some pain and/or limitations as a result of her physical impairments, the evidence as a whole does not substantiate such severe functional limitations that would preclude her from performing all work-related activity as is required under Social Security rules and regulations. The medical evidence reveals that the claimant has a history of early stage cirrhosis of the liver. The claimant has a history of alcohol abuse. . . . There was no evidence or stigmata of chronic liver disease. On January 11, 2002, the claimant's liver enzymes were absolutely unremarkable. . . . Additionally, a liver biopsy performed in February 2002, revealed only minimal hepatitis with mild periportal fibrosis. There was no evidence or cirrhosis. . . . On June 5, 2002, Dr. Suleimen opined that the claimant did not have full-blown cirrhosis, but that she has an alcoholic liver disease.
>
> The medical evidence also reveals that the claimant has complained of pain in her feet, legs and hands with associated weakness of her lower extremities, tremors of her hands and feet and dizziness. In July 2001, the claimant reported that she was taking only over-the-counter medications for her pain. She complained only of intermittent numbness and tingling of her right foot. Examinations have revealed full range of motion of the upper and lower extremities. There has been no cyanosis or clubbing. Straight leg raising test have been negative. There has been no edema, ulceration or varicosities of the lower extremities. During the consultative examination conducted by Dr. Gilmer, the claimant ambulated without assistance and without a limp. She was able to walk on her heels and toes without difficulty. There was decreased vibratory sense of a moderate degree in both feet, however she had good sensation to cotton swab touch in both lower extremities. X-rays of the lumbar spine, left knee and left ankle were essentially normal. Motor strength examination has been essentially within

-11-

>     normal limits.  There has been some giveaway weakness of the upper and lower
>     extremities.  However, sensory examination has been within normal limits.  During
>     examination by Dr. Ahmed . . . the claimant's deep tendon reflexes were within
>     normal limits.  In addition, nerve conduction studies did not seem to show any definite
>     abnormalities.  Overall, I find the claimant's testimony and subjective statements
>     regarding her pain and limitations credible to the extent of establishing that she has a
>     combination of sever impairments, but not fully credible to the extent of establishing
>     that these impairments are so severe as to preclude her from performing substantial
>     gainful activity as required under Social Security rules and regulations.  Accordingly,
>     I find the claimant's stated symptoms somewhat exaggerated over what would be
>     expected based on the medical findings in the record.

R. 21.

Plaintiff contends that the severity of her pain is supported by her many doctors' visits and use of medications and the fact that "[a]t no time did the treating physicians indicate that [Plaintiff] should not be experiencing pain or that she was exaggerating his [sic] symptoms." Doc. No. 10 at 19. To the contrary, as noted above in the RFC discussion, Plaintiff's own physician, Dr. Ahmed, had doubts about Plaintiff's credibility and effort during the exam he performed: "There are some hystrionic components to exam, give away weakness on exam." R. 326. In earlier treatment notes, Dr. Ahmed stated that during the examination, Plaintiff "is histrionic and tearful during the test. I am unsure if she is giving her best effort at times." R. 345. Even in prior examination in 1999, the treatment notes reflect that Plaintiff was not cooperative with the neurological testing, even though she exhibited no obvious focal motor or sensory deficit. R. 173. At Plaintiff's psychological evaluation on September 4, 2001, she had trouble admitting that she had a drinking problem in the past, stating that she never actually got drunk (R. 221), although other medical records show she was admitted to the Emergency Room twice due to symptoms of alcohol withdrawal (R. 127-32, 164-73) and confessed to being a chronic alcoholic, drinking approximately one-half of a fifth of Tequila daily for ten years. R. 130.

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

In this case, the ALJ offered extensive and specific citations to the medical records in support of his discrediting Plaintiff's subjective complaints of pain. The ALJ's reasons included inconsistencies between Plaintiff's reports of pain and the medical records and examination findings. These are factors the ALJ is directed to consider pursuant to the regulations. 20 C.F.R. §§ 404.1529; 416.929. The ALJ's reasons are supported by substantial evidence.

### D.  Application of the grids

Plaintiff claims that because she suffered from peripheral neuropathies in her hands, feet, and back and a mental impairment, she had nonexertional limitations, precluding the application of the grids and requiring VE testimony.

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant court perform other work that exists in the national economy. *Foote*, 67 F.3d at 1558. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the "grids." *Foote*, 67 F.3d at 1558. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant

non-exertional factors. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e); *Foote*, 67 F.3d at 1559; *Heckler v. Campbell*, 461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills." *Walter v. Bowen*, 826 F.2d 996, 1002-3 (11th Cir. 1987). In almost all of such cases, the Commissioner's burden can be met only through the use of a VE. *Foote*, 67 F.3d at 1559. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a VE to establish whether the claimant can perform work which exists in the national economy. In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations. *Foote*, 67 F.3d at 1559.

In this case, the ALJ properly determined that Plaintiff did not suffer from a severe mental impairment. The ALJ considered Plaintiff's physical impairments, including alcoholic liver disease, neuropathy and resulting pain, and properly assigned an RFC for sedentary work. The ALJ further specifically found that Plaintiff's capacity for sedentary work was substantially intact and had not been compromised by any nonexertional limitations. R. 22. Because Plaintiff could perform unlimited types of work at a sedentary level, it was unnecessary to call a VE to establish whether she could perform work existing in the national economy. *See Foote*, 67 F.3d at 1559. Accordingly, the ALJ was justified in his reliance upon the grids. *See id.*

## *IV. CONCLUSION*

The record in this case shows that Plaintiff's lifestyle and activities are affected by her ailments to some degree. The ALJ appropriately considered these circumstances and analyzed them in relation to the exacting disability standard under the Social Security Act. For the reasons set forth above, the ALJ's decision is consistent with the requirements of law and is supported by substantial evidence. Accordingly, the Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on July 25, 2005.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record